Beatrice Shainswit, J.
Plaintiff, a jewelry salesman, sues for his commissions for the years 1972 and 1973; defendant admits the commissions are due, but refuses payment on the ground of disloyalty. After trial, without a jury, I find for plaintiff on the facts and the law.
Defendant is a small firm selling, at wholesale, custom-made 18-carat gold jewelry. It was formed in 1965, and before 1974 consisted of two equal stockholders, Ira Schechter and Albert Lipten. At present the sole owner is Mr. Schechter, since Mr. Lipten is now in business with plaintiff.
It is stipulated that plaintiff, defendant’s sole salesman in 1972 and 1973, generated over $1,000,000 in business during those two years; that he received his regular drawing of $500 to $750 a week; and that the amount of commissions still due him, after the deduction of various agreed-on credits and allowances, would be $35,794, were it not for the two issues raised by defendant. The latter insists that:
(a) Plaintiff’s drawings of $23,000 for the period between May 23, 1973 and December 1, 1973 (the date plaintiff left defendant) should be repaid to defendant, and the commissions owed plaintiff for that period — $18,900—have been forfeited — because, in that time, plaintiff was actively forming a competing business, with Mr. Lipten as his partner; and
(b) In addition, plaintiff should repay $12,268 paid by defendant for plaintiff’s airfare expenses on defendant’s behalf in those two years, because that was their agreement, in defendant’s view.
It should be noted that this was defendant’s ultimately evolved position on the trial, one drastically different from that contained in its pleadings and on many earlier motions herein. First of all, defendant originally sought to hold on tc the entire last two years of plaintiff’s commissions over an( above his drawings, simply because of his alleged disloyalty i?. the last six months of that period. It was only on the trial that defendant finally sought to amend its theory to a claim for all earnings, drawings and commissions, but limited to those accrued during the last six months. Secondly, defendant had originally sought injunctive relief, loss of profits, and various counterclaims, all based on unfair competition, alleged theft of customers and trade secrets, and conspiracy with Lipten, together with inducing him to damage defendant’s business; on the trial defendant expressly and haec verba dropped each and every one of these, and limited its complaint to plaintiff’s *996 six months of secret plans, while still representing defendant. Belated as this rethinking was, nevertheless, in the interest of justice, to avoid more years of delay, and in the absence of a showing of harm or surprise to plaintiff, I have permitted a wholesale conforming of all pleadings to the proof, albeit with considerable reluctance.
Facts
Most of the facts are not in dispute. Plaintiff began selling defendant’s line in 1967. At the time, he also sold three other jewelry lines, all in an area of the United States centering around his home in Oklahoma City. In 1968, by oral agreement, he became defendant’s sole, and first, nationwide salesman, replacing various persons who had been doing sporadic selling for the company since its formation.
Plaintiff at that point took steps to drop two of his other lines — simply because of lack of time — but continued through all the years thereafter to sell for at least one company besides defendant, in an amount representing somewhat more than 5% of his volume. His status differed from the usual employee also in that he paid all of his own expenses, and received no salary, but simply a drawing against commissions of 10% on gross sales (less returns and allowances); moreover, defendant did not withhold income taxes. Defendant did, however, make Social Security, Blue Cross, Workmen’s Compensation and disability payments for him; I find that this was done in order to meet the requirements of defendant’s insurance policy for the jewelry samples carried by plaintiff, which cost over $60,000. In all other respects I conclude that plaintiff was in fact a traditional sales representative rather than an employee.
On December 1, 1973, at the end of the selling season, Mr. Schechter’s partner, Mr. Lipten, and plaintiff both informed Schechter that they were leaving defendant company and forming their own company in the same line of business; they did so, and said company now exists and is known as Cyrano Creations. Defendant urges that the preparations made by Lipten and plaintiff, in the months preceding December 1, 1973, constituted disloyalty, and should bar plaintiff from receiving any payment for work done by him during the entire period after May 24, 1973. That date was chosen by defendant as a cutoff point — somewhat arbitrarily, its counsel acknowledged — because it was then that plaintiff and Lipten filed articles of incorporation for their proposed company.
*997 In fact, the evidence indicated that the preparations made by plaintiff and Lipten before December 1, 1973 consisted of the following steps: They held oral discussions, beginning in March or April of 1973. They saw an attorney, introduced by Mr. Lipten, who prepared a certificate of incorporation and a stockholders’ agreement, on a 50-50 basis, in May of 1973. They opened a corporate bank account, in June, 1973, which contained $10,000 by the fall of 1973. They had stationery prepared, also in June, 1973, bearing the name of Cyrano Creations and plaintiff’s home address. They spent $8,500 on molds, models and designs ordered in Europe in July, 1973 (this was done by Mr. Lipten on his vacation). Finally, they told some of defendant’s customers about their plans, in October of 1973.
It should be noted that the customers dealt with by the defendant then, and by plaintiff and defendant now, are luxury retail jewelry stores and boutiques across the country; many of them were serviced by plaintiff before he joined defendant and they are all listed in the publication known as the Jewelers Red Book. At the trial it was expressly admitted that no possible secrecy existed as to those or any other customers, or as to relationships with them, and similarly, as to the suppliers, manufacturers, casters, molders, etc. with whom plaintiff and defendant both deal — and that, therefore, no claim of wrong based thereon was being made.
It is also conceded that plaintiff and Lipten did not rent or even look for office space before they left defendant company; or have any casting or other actual manufacturing done; or take or solicit any orders; or make any sales whatever (their first actual sale was in March, 1974). As we have noted, defendant expressly withdrew all allegations or intimations in the pleadings as to theft of business secrets or of customer lists. Defendant further agreed that it could not establish any damage whatever done by plaintiff to defendant’s business. On the contrary, defendant admitted that both Lipten and plaintiff worked full time for defendant until the day they left, continuing until the end of the selling year to avoid disrupting defendant’s business, and, in fact, produced the very best year in defendant’s history. Finally, defendant acknowledged that there was no evidence of interference, or attempted interference, by plaintiff with any relationship between defendant and any employee or any supplier.
It should be added that Mr. Lipten and Mr. Schechter, in *998 1974, resolved their business differences; Mr. Schechter bought out Mr. Lipten for a substantial sum, and general releases were exchanged. Mr. Lipten appears here only as a witness on behalf of the plaintiff — defendant, on the trial, having expressly withdrawn all charges of conspiracy between plaintiff and Lipten.
The Law
The court has considered at length defendant’s position that it need not pay plaintiff for six months of his earnings because of his actions during that period preliminary to formally opening a competing business. In this connection I have looked with care at the decisions relied on by defendant, in which an employee uses his employer’s time or facilities to build up a competing business, or steals business secrets or uses business knowledge derived from his employer. (Lamdin v Broadway Surface Adv. Corp., 272 NY 133; Duane Jones Co. v Burke, 306 NY 172; Defler Corp. v Kleeman, 19 AD2d 396, affd 19 NY2d 694.)
Not only can none of those charges be made against plaintiff —but, in fact, he was only in the most technical sense an employee of defendant. He was treated as one for defendant’s benefit insurance-wise; in actuality, he was a commissioned salesman, representing at least one other company and sometimes more. Patently, he spent at least as much time on that other company, from which he earned some $3,300 in 1973, as he did on planning to set up his present business; and yet defendant concedes that it has no complaint about that other company. The fact is that, regardless of his technical status, plaintiff was in substance a salesman, whose earnings related directly to the sales he obtained for defendant; his situation was thus entirely different from that of the true employees involved in the cases cited by defendant. The implication in those cases, over and above the theft of trade secrets, business knowledge, etc. was that inevitably the employees were using their employer’s time for their own benefit. This could not have happened here, where the commissions were large only because the sales made were large; a salesman’s interest, unlike an employee’s, is identical with his principal’s, and his compensation is based on production, not time. Even, therefore, if the employee cases cited by defendant were otherwise applicable — which they are not, since no unfair competition is here indicated — they would not apply to plaintiff salesman.
*999 Of course, there is no question, regardless of whether plaintiff was an employee or simply an agent, that he owed defendant good faith and loyalty. Even though there was no contractual prohibition against his going into a competing business, he clearly could not do so using secret knowledge or information gained from defendant; and while he represented defendant, he could not perform negligently, or downgrade defendant’s reputation; in short, he could not in any way betray his trust. But none of that was done, even allegedly. There is no hint of double dealing or of theft, or of either any advantage achieved by plaintiff after leaving for his competing business, or any damage done to defendant before leaving.
Indeed, it is basically irrelevant to defendant’s position that plaintiff went into a competing business. Since there is no question of stealing secrets or unfair competition of any kind, plaintiff might just as well have been going into the fur or automobile business; no harm to defendant, or wrongfully acquired good to plaintiff, is attributable to the competing business. Defendant’s complaint really is, not about the new business — competing or otherwise — but simply that plaintiff made his plans, secretly, while still representing defendant. But here, likewise, it is conceded that this in no way harmed defendant or advantaged plaintiff — defendant’s business was, in fact, better, and whatever work was actually done for Cyrano, like getting designs, hiring an attorney, etc., was done by Lipten, who is not being sued. (Indeed, whatever disputes there were between Lipten and Schechter were resolved in their own financial settlement.) Moreover, defendant cannot even claim surprise, since Schechter himself testified of his own knowledge, a year in advance, that plaintiff was job-hunting, and his own statement to Lipten that plaintiff should leave, if he was unhappy.
Apparently, then, defendant would not have objected had plaintiff left, taken on three or four other rival jewelry lines, approached the very same customers, and dealt with the very same suppliers — just so long as plaintiff did not himself become a rival capitalist, especially not together with a former partner of defendant. Such aspirations, on defendant’s view of the law, apparently condemned plaintiff to taking no steps whatever until after he actually left defendant. As it was, plaintiff did not make his first sale for over three months— defendant’s view would have condemned him to go without income for six months more. No such burden on enterprise is *1000 required by the law; I find that plaintiff, though obviously self-interested, acted with all necessary care for defendant’s rights.
See, Public Relations Aids v Wagner (37 AD2d 293, affd 30 NY2d 890) and Leo Silfen, Inc. v Cream (29 NY2d 387); and compare the emphasis by the Appellate Division, Second Department, just the other day, on the need for some kind of "commercial banditry” to warrant relief in these cases. (Lincoln Steel Prods. v Schuster; NYLJ, July 23, 1975, p 12, col 1 [relief based on actual conversion of business records and diversion of business opportunities].)
It is defendant, not plaintiff, that seems to the court to be acting in an unconscionable fashion in this case. The original pleadings, hastily amended on the trial, made that very plain. Defendant openly refused to repay plaintiff’s concededly earned commissions, owing for a full two years, using plaintiff’s departure as an excuse. On the trial, capable counsel came up with a last-minute theory, adding together drawings already paid and commissions still due for the six months after the filing of articles of incorporation in plaintiff’s paper corporation, to come up with a wholly new figure totalling a good deal more than the unpaid two years’ commissions (although, interestingly enough, no counterclaim was filed covering these alleged new debts). But the law does not look kindly on forfeitures, however genuine defendant’s indignation over plaintiff’s action in deserting defendant and forming his own competing business. Defendant’s demand for recapture of drawings already paid, over and above commissions concededly due, shocks the conscience of the court, and is clearly forbidden by law — in the absence of a covenant not to compete, open dishonesty, or flagrantly unfair competition permeating plaintiff’s service. (See, Haggerty v Burkey Mills, 211 F Supp 835; Kleinfeld v Roburn Agencies, 270 App Div 509.)
In the case at bar, plaintiff was simply pursuing the normal American dream of bettering himself by going out on his own, and he did it without harming defendant in any way. To deprive him of his hard-earned commissions — when preparing for his new enterprise involved neither taking secrets or special knowledge away from defendant, nor lessening his work for defendant while he remained there — would be to unjustly enrich defendant. Much as I sympathize with defendant’s unhappiness over being deserted by his partner, together *1001 with his sole and valued salesman, the court cannot be a party to solacing that unhappiness with plaintiffs earnings.
Subsidiary to the main issue is defendant’s claim of an offset against plaintiffs commissions of $12,268 for plaintiffs airfare in 1972 and 1973. The parties are in agreement that the original oral arrangement, in 1968, was for defendant to pay plaintiffs airfare, and plaintiff to pay all his own expenses otherwise. Defendant Schechter insists, however, that in 1968 he told plaintiff he would have to pay airfare also when his income went over $30,000 a year; and that in 1972, when it appeared that plaintiffs income would approach $50,000, he did in fact demand reimbursement. Plaintiff denies any such arrangement in 1968; notes that no issue was raised in 1971, when his income was over $31,000; says that when Schechter made his demand at the end of 1972, Lipten intervened, and the demand was dropped; and points out that defendant never revoked his credit cards or billed him for airfare. Mr. Lipten corroborates plaintiffs testimony.
As to this offset issue of the airplane fares, on the basis of all the credible evidence, I find in favor of plaintiff. I have carefully considered the testimony of each witness, as well as the logic of the situation. I find, on the entire record, that defendant’s version is not supported by the evidence. I cannot credit defendant’s belated attempt to reduce its debt to plaintiff.
I would find for plaintiff on this issue even if he had the burden of proof. Since defendant has the burden on this offset issue, a fortiori, defendant cannot prevail.
Judgment for plaintiff in the sum of $35,794, together with interest and costs.