■ KENNETH FEIGER, Respondent, v IRAL JEWELRY, LTD., Appellant.— Judgment, Supreme Court, New York County, entered on September 17, 1975, affirmed on the opinion of Shainswit, J., at Trial Term. Respondent shall recover of appellant $60 costs and disbursements of this appeal. Concur—Kupferman, J. P., Murphy, Silverman and Nunez, JJ.; Lupiano, J., dissents in the following memorandum: In 1968, plaintiff became a salesman for defendant's line of jewelry in the southwestern United States. Later in that same year, he became the sole nationwide salesman for defendant, a corporation engaged in the design, manufacture and sale, at wholesale, of custom-made 18-carat-gold jewelry. From its incorporation until December, 1973, defendant was comprised of just two stockholders, Ira Schechter and

Albert Lipten. Although there was no formal or written agreement, plaintiff's employment was full-time and substantially exclusive. He retained only a noncompetitive line of pearls, which in 1973, accounted for approximately 5% of his income. Pursuant to the agreement, plaintiff received a commission of 10% of gross sales, less returns and allowances, and was entitled to a regular draw against such commissions. His draw began at $300 per week and increased, so that in 1973, he was receiving $750 per week. On December 1, 1973, plaintiff advised defendant that he was leaving its employ. Since that time, he has been engaged in a business competitive with that of defendant under the corporate form of Cyrano Creations, Inc. The creation of Cyrano Creations, Inc., had as its inception discussions between plaintiff and Lipten in March, 1973 with a view toward engaging in the jewelry business as a competitor of the defendant. On May 24, 1973, a certificate of incorporation for Cyrano Creations, Inc., was filed. A bank account was opened in the corporate name. Some five months before he left defendant's employ, plaintiff participated in the purchase by Cyrano Creations, Inc., of $8,500 worth of jewelry designs, payment for which was made from the corporate account funded by him. In addition, plaintiff had jewelry models made, contacted materialmen, casters and other potential suppliers, advised many of defendant's customers that he was leaving defendant's employ to form his own business and generally engaged in the preparation of Cyrano Creations, Inc., for full functioning as a business. In the instant action, plaintiff seeks to recover $35,794 representing the *stipulated* amount of commissions which have not been paid by defendant. It is well recognized that "A relationship of trust and confidence exists between a principal and an agent, in consequence of which the agent is required to act in the utmost good faith and undivided loyalty toward the principal. * * * Agents must act in accordance with the highest and truest principles of morality, fidelity, loyalty, and fair dealing" (2 NY Jur, Agency, § 189). Thus, plaintiff while an agent of the defendant, was required to avoid double-dealing or otherwise acting in a disloyal fashion (see *Meinhard v Salmon,* 249 NY 458, 464; *Murray v Beard,* 102 NY 505; *Reis & Co. v Volck,* 151 App Div 613). The *secret* formation by such agent of a competitive business while in the employ of the principal has been held a breach of the fiduciary obligation inherent in the principal-agent relationship *(Duane Jones Co. v Burke,* 306 NY 172; *Defler Corp. v Kleeman,* 19 AD2d 396, affd 19 NY2d 694; *Tepfer & Sons v Zschaler,* 25 AD2d 786). At trial defendant conceded that no theft of trade secrets or customers lists occurred. Indeed, it appears to be conceded that plaintiff did not do business with defendant's customers until after he severed his relationship with defendant. While these circumstances do not give rise to issues involving the drastic remedy of injunction and related relief, they patently constitute the predicate for concluding that plaintiff is not entitled to compensation during the period when, still employed by defendant, he was engaged in establishing Cyrano Creations, Inc. *(Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133, 138; *Defler Corp. v Kleeman, supra; Tepfer & Sons v Zschaler, supra).* The filing of the certificate of incorporation of Cyrano Creations, Inc., on May 24, 1975 commences the period during which plaintiff is not entitled to compensation (see *Defler Corp. v Kleeman, supra).* "The rigid rules * * * which bind an agent to the utmost fairness in his dealings with respect to his principal's business are universal in their application and are well understood. * * * It has been said that the reason for these rigid rules respecting agents is that all temptation shall be removed from one acting in a fiduciary capacity to abuse his trust or seek his own advantage in the position which it affords

him. *(Meech. Agency,* § 469.)" *(Reis & Co. v Volck,* 151 App Div 613, 614–615, *supra).* This overriding consideration patently suggests that it is the disloyalty itself and not its consequences to the employer or principal which is to be condemned. It is the disloyalty itself which bars the agent from compensation and the failure of the principal thus injured to prove direct damage to its business may not be availed of to restore such compensation (see 2 NY Jur, Agency, § 229; see, also, *Bruno Co. v Friedberg,* 21 AD2d 336). The claim that deprivation of compensation for the period embraced within the disloyalty is inequitable or "shocks the conscience" fails to take cognizance that our courts have afforded this relief to principals out of a recognition that, whatever the conventional damages represented by loss of profits or loss of business, the principal is injured when his agent secretly engaged in competition. Although defendant gained in sales consummated through plaintiff's efforts, the fact remains that defendant was deprived of information essential to the continuation of the agency relationship which defendant was entitled to know in order that it might intelligently choose how and whether to continue that relationship (see *Murray v Beard, supra).* Moreover, by concealing from defendant his formation and initial development of Cyrano Creations, Inc., plaintiff in effect deprived defendant of an opportunity to mitigate the effects of the competition which emanated from that corporation. Thus, an unfair competitive advantage was obtained, whether or not such advantage can be translated into conventional damage concepts. To recapitulate: On May 24, 1973, plaintiff was the sole nationwide salesman of defendant, entrusted with its sample line and responsible for relationships with all of defendant's customers. Had plaintiff left defendant's employ on that date, as was his proven intention to do so, or at least *advised* defendant of the formation of the competitive business, so that the latter might have intelligently chosen its course of action, defendant would have been in a position to then seek out, retain and train a new salesman and to make sure that all of its customers were properly and directly served. Furthermore, the position of plaintiff from at least May 24 until December 1, 1973, was surely one in which his interest in his own corporation would "naturally influence" his own conduct and render him suspect with respect to and indeed frustrate his faithful performance to defendant. *(Lamdin v Broadway Surface Adv. Corp., supra; Murray v Beard, supra.)* In view of the relationship between plaintiff and defendant and as the trial court declared, "there is no question regardless of whether plaintiff was an employee or simply an agent, that he owed defendant good faith and loyalty" (see *Wendt v Fischer,* 243 NY 439; *Byrne v Barrett,* 268 NY 199). Scrutiny of the trial record clearly demonstrates that the agreed compensation to which plaintiff would be entitled for his services was 10% of gross sales less returns and allowances. In addition, plaintiff was permitted a drawing rate against commissions. It was conceded by defendant at trial, noted in the decision and opinion of the Trial Justice and averred by defendant on this appeal in his briefs, that plaintiff's drawings for the period between May 23 and December 1, 1973 were $23,000 and that the commissions owed plaintiff for that period are $18,900. Defendant's contention that plaintiff has forfeited both these amounts fails to perceive that the draw is *against* commissions and *it is the comissions* which form the compensation to which plaintiff is entitled. As it is conceded by defendant that the commissions to which plaintiff is otherwise entitled amount to $35,794, we are not concerned with the issue of whether the amount drawn by plaintiff against commissions reduced the defendant's indebtedness to plaintiff so as to offset wholly or in part the aforesaid sum. Indeed, defend-

ant does not purport to claim that the amount drawn by plaintiff against commissions exceeded such commissions and that defendant is entitled to such excess. In this connection, note should be taken of the distinction between cases dealing with the question of recovery by the employer of amounts paid an employee under a drawing account, which exceeded commissions actually earned, and those dealing with the right to recover compensation paid in ignorance of an employee's fraudulent conduct (see *Kleinfeld v Roburn Agencies,* 270 App Div 509; *Pease Piano Co. v Taylor,* 197 App Div 468; *Defler Corp. v Kleeman, supra).* Accordingly, it must be concluded under the foregoing analysis that plaintiff has forfeited commissions of $18,900 for the period between May 23 and December 1, 1973 and this reduces the amount of $35,794, admittedly otherwise owed, to $16,894. It is, therefore, concluded that the judgment of the Supreme Court, New York County, entered September 17, 1975, which adjudged that the plaintiff recover of defendant the sum of $35,794 with interest from December 31, 1973 and the costs and disbursements in the sum of $541.50 should be modified, on the law, to the extent of reducing the sum of $35,794 to $16,894 with interest and costs as aforesaid and, as so modified, the judgment should be affirmed, with costs and disbursements. [85 Misc 2d 994.]