**BRITISH AMERICAN & EASTERN CO., INC. and Frederick L. Sunley, Plaintiffs-Appellees,**

**v.**

**WIRTH LIMITED, Wirth Incorporated and Manfred F. Wirth, Defendants-Appellants.**

**No. 325, Docket 78–7412.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1978.

Decided Jan. 23, 1979.

T. Barry Kingham, New York City (Pollack & Kaminsky, Daniel A. Pollack, Martin I. Kaminsky and Neil D. Thompson, New York City, on the brief), for plaintiffs-appellees.

J. Robert Lunney, New York City (Lunney & Crocco and James J. Deluca, New York City, on the brief), for defendants-appellants.

Before LUMBARD, MOORE and GURFEIN, Circuit Judges.

LUMBARD, Circuit Judge:

In this diversity case, defendants Wirth Limited, Wirth Incorporated, and Manfred F. Wirth ("Wirth") appeal from a judgment entered by Judge Knapp in the Southern District on July 10, 1978, after a bench trial, insofar as it dismissed Wirth's defenses and counterclaims and awarded damages for breach of contract totalling $27,085.84 to plaintiffs British American and Eastern Co., Inc. and Frederick L. Sunley ("Sunley").[1] On appeal, Wirth asserts that Sunley should not recover (1) because Sunley failed to prove performance of the contract, (2) because Sunley's acceptance of alleged "bribes" breached the contract, and (3) because Sunley's allegedly defamatory statements with respect to Wirth's business performance breached the contract. Wirth also contends that he is entitled to recover all sums paid to Sunley pursuant to the contract, the amount of the alleged "bribes" paid to Sunley, and damages for libel. With respect to Wirth's defense and counterclaim growing out of Sunley's allegedly defamatory statements, we affirm. With respect to Wirth's claims that Sunley failed to prove performance and that Sunley's acceptance of bribes breached the contract and entitled Wirth to recover the monies paid as bribes, we remand for further findings of fact and conclusions of law.

Plaintiff Sunley was for twenty years the United States representative for an Austrian steel mill known as VMW. In 1973, when Sunley reached 74 years of age, VMW began looking for a younger successor to Sunley. Relying in part on Sunley's recommendation, VMW engaged defendant Wirth to be its United States representative in February, 1974.

---

1. Plaintiff Sunley and defendant Wirth each acted through corporations which are named parties in this action. Since each corporation is no more than the alter ego of its founder and president, we will refer only to Sunley and Wirth.

On February 22, 1974, as part of the transitional arrangement, Sunley and Wirth entered into a written agreement which provided in relevant part that:

FLS [Sunley] and MFW [Wirth] agree . . . not to interfere in each other's business, warrant against any competition with each other's business lines, disclosures to outsiders, off-hiring of employees, etc. [The agreement referred to this provision as a "non-competition warranty"].

FLS will actively support MFW's sales efforts in the U.S.A. and Canada as well as help obtain maximum quantities of base metals from VMW at competitive prices.

For these efforts, FLS will be entitled to a fee [of ¼ to ½ cents per pound on sales of aluminum, copper and brass products shipped by VMW through Wirth].

Although performance of the agreement began auspiciously enough, the initial harmony proved to be of short duration as Sunley became concerned that Wirth was mishandling VMW's business, thus depriving him of commissions he otherwise would have earned. Sunley began writing a series of letters to the VMW management detailing Wirth's alleged deficiencies and suggesting that VMW should take steps to rid itself of Wirth.

Wirth also claims that Sunley accepted bribes from Non-Ferrous, a customer of Wirth, in exchange for an increase in Non-Ferrous' allocation of scarce aluminum. Wirth testified at trial that he did not know about these alleged bribes until after Sunley had been working for him for several months. Sunley, however, testified that the payments he received from Non-Ferrous were not bribes but were in fact payments for past services, and that he had told Wirth of this arrangement when they first began working together. Sunley also testified that these payments ceased soon after his agreement with Wirth took effect. Sunley's testimony was partially corroborated and partially contradicted by Wirth and by Ames, the president of Non-Ferrous.

Wirth ceased making the payments to Sunley required by the contract in January, 1976. Sunley then sued for breach of contract. The district court awarded Sunley $27,085.84 in damages and Wirth now appeals.

■ Wirth's first claim on appeal is that the district court's award of damages was made without affirmative proof that Sunley performed his part of the contract. Although New York law, which concededly controls disposition of this case, clearly places the burden of proving performance in an ordinary contract action upon the plaintiff, *Bevelheimer v. Slick Airways, Inc.*, 303 F.2d 69 (2d Cir. 1962), the district court nevertheless precluded proof of performance, apparently for two reasons.

■ First, although Sunley attempted to offer some proof of performance, he believed that he could recover simply by placing the contract into evidence and rebutting Wirth's affirmative defenses. The district court suggested that to the degree this contract might be construed to be a commission or royalty contract, paying Sunley a percentage of the receipts for all future orders as compensation for his work in building up the business taken over by Wirth, payment would not be dependent on any continuing performance. The contract Sunley relied upon, however, was not a pure commission or royalty contract providing compensation solely for past efforts. It explicitly contemplated continuing performance by Sunley. Sunley was required to "*actively support* MFW's sales effort . . . as well as *help obtain* maximum quantities of base metals. . . . *For these efforts,* FLS will be entitled to a fee. . . ." (emphasis added). Thus proof of performance was a necessary part of Sunley's case.

■ Second, the district court held that even if the contract was not a commission but rather a consulting contract requiring proof of performance by Sunley precedent to recovery, Wirth could not raise this issue in defense because Sunley had, "both at pre-trial and at trial, made clear that he was proceeding on the theory that he had a

contract for commissions and was entitled to recover unless some act of disloyalty or other misconduct was established against him, and Wirth did nothing to alert the court or counsel to any contrary view." Paragraph nineteen of Wirth's verified answer, however, states that "Plaintiffs breached the agreement alleged in the complaint by discontinuing to actively support [MFW's] sales efforts in the U.S.A. and Canada as . . . agreed; as a result there has been a failure on the part of plaintiffs to give the consideration to be given by plaintiffs for the agreement of defendants."

■ Although Wirth may have laid primary emphasis before trial and at trial on his affirmative defenses, paragraph nineteen of his answer nevertheless put in issue the question of Sunley's performance. The record provides no basis for supposing that Wirth ever conceded performance by Sunley or waived the defense raised by the answer. Nor was it necessary for Wirth to make a motion pursuant to Rule 41(b) F.R. Civ.P. on this issue at the close of Sunley's case. Where the defendant has properly raised a defense such as lack of performance in his pleadings, he need not remind the court via a 41(b) motion that he is continuing to rely upon that defense. See 9 C. Wright and A. Miller, Federal Practice and Procedure (Civil) § 2371, at 222 (1976) ("At the close of all the evidence the court [in a non-jury trial] must make findings of fact and conclusions of law and the sufficiency of the evidence to support these is reviewable regardless of what motions have been made"). Wirth's claim that Sunley had failed to perform his part of the bargain was properly placed before the court both in Wirth's answer and in Wirth's posttrial memorandum. Accordingly, we must remand so that the district court can make specific findings of fact as to Sunley's performance.

Whether additional testimony will be required before the district court can make findings of fact on the issue of performance we leave to the considered discretion of the district court. The record indicates that neither the plaintiff nor the defendant was allowed sufficient opportunity to develop the matter of Sunley's performance or nonperformance.

Wirth's second contention on appeal is that Sunley's claim for compensation should be barred because Sunley sought and received commercial bribes from Non-Ferrous, a customer of Wirth, in exchange for increasing Non-Ferrous' allocation of scarce aluminum. Wirth further contends that Sunley should be required to turn over to Wirth the payments Sunley received as bribes. Sunley responds that Wirth failed to establish that payments received from Non-Ferrous were improper or a breach of contract. The district court made no finding as to whether these payments were bribes or were merely payments for services rendered, on the ground that even if they were bribes, acceptance of these payments did not breach the contract because Wirth could show no injury caused by their receipt. Thus the district court treated the allegations of bribe-taking as irrelevant to Sunley's contract claim.

■ Wirth's allegations of bribe-taking, however, are not irrelevant if Sunley's relationship with Wirth was that of an agent or fiduciary. An agent's contract action for compensation from his principal can be defeated if the principal shows that the agent breached his trust by accepting from the principal's customers, without the principal's knowledge, monies intended to influence the agent's actions concerning a matter affecting the principal's interest. *Lamdlin v. Broadway Surface Adv. Corp.*, 272 N.Y. 133, 5 N.E.2d 66 (1936). *See also Blackburn & Co. v. Park*, 357 F.2d 525 (2d Cir. 1966). Cf. N.Y. Penal Law § 180.00 et seq. (Commercial Bribery) (McKinney's 1978). In addition, where there is an agency relationship, the principal is entitled to recover any monies paid as commercial bribes to his agent. *Western Electric Co. v. Brenner*, 41 N.Y.2d 291, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977); *Sears, Roebuck & Co. v. Kelly*, 1 Misc.2d 624, 149 N.Y.S.2d 133 (Sup.Ct.N.Y.Co.1956).

Although the district court indicated in its review of Wirth's libel claim that Sunley was an independent contractor and not an agent, we hold that in his dealings with Non-Ferrous Sunley acted as Wirth's agent. An agent serves under the control and supervision of his principal; so long as he acts within the ambit of his authority to represent his principal, he binds him. Such was the case with Sunley's dealings with Non-Ferrous once his agreement with Wirth took effect. The trial record indicates that Sunley was empowered to take orders from Non-Ferrous and from other customers for Wirth's account.[2] This is the essence of the agency relation. See Restatement of Agency 2d §§ 1, 302 (1958). Indeed, Sunley handled customer relations on Wirth's behalf in a number of ways, as he was hired to do, from assessing their supply needs to informing them of changes in the way Wirth planned to handle import duties. As Wirth's agent, Sunley also had supervisory authority over Wirth's secretarial staff. Accordingly, if Sunley accepted payments from Non-Ferrous designed to influence the way in which he fulfilled his duties as Wirth's agent, Wirth is entitled to recover those payments and Sunley is barred from recovering on the contract.

The district court, however, did not decide whether the payments Sunley received from Non-Ferrous were actually bribes because it concluded that Wirth had not shown direct injury from the alleged bribe-taking. We hold that finding clearly erroneous. Even if, as the district court hypothesized, Non-Ferrous did not attribute Sunley's actions to Wirth, any customer such as Non-Ferrous would certainly prefer to do business with a company which employs salesmen who do not demand extra payments for themselves. In addition, where there is an agency relationship, the principal need not show injury through bribe-taking in order to defend against an action by the agent for compensation or to prevail in an action to recover the amount of the bribes. The strong public policy against all kinds of bribery requires that injury be presumed under these circumstances. The acceptance by an agent of secret payments to himself for doing what he is already under an obligation to do is obviously destructive to the relationship with his principal and contrary to dealing fairly with customers of the principal. Accordingly, the purpose and the propriety of the payments to Sunley should be determined by the district court on remand.

Wirth's third claim on appeal is that Sunley should not recover on the contract because he breached the agreement by writing defamatory letters to VMW in Austria concerning Wirth's alleged deficiencies. Wirth claims that the allegations in these letters were false, that they were known to be false when made, and that they were motivated by malice. Without distinguishing between Wirth's allegations of defamation as a defense to Sunley's claim for compensation on the contract and as an independent counterclaim for libel, the district court found that Sunley had a qualified privilege to write these letters so long as they were not motivated by malice, even if the charges made were false, and that they were not motivated by malice.

Sunley's letter-writing campaign, however, could have breached his contractual obligations without amounting to actionable libel. An employee owes his employer "good faith and loyalty" and cannot publicly downgrade his employer's reputation under New York law. *Feiger v. Iral Jewelry Ltd.*, 85 Misc.2d 994, 999, 382 N.Y. S.2d 216 (Sup.Ct.N.Y.Co.1975), *aff'd* 52 A.D.2d 524, 382 N.Y.S.2d 221 (1st Dept. 1976). The district court found, however, that Sunley did not owe Wirth this duty of loyalty because Sunley was an independent contractor and not an employee. But even where there is no employer-employee relationship, defamatory letters might amount to a breach of contract. Here, Sunley contracted to help Wirth "obtain maximum quantities of base metals from VMW" and

---

**2.** Indeed, one of Wirth's original counterclaims against Sunley alleged that Sunley had negligently processed an order from one of Wirth's customers.

promised not to interfere with Wirth's business or make disclosures to outsiders.

 However, the district court found, and we agree, that Sunley had a qualified privilege to write these letters arising "out of Sunley's long business association with VMW, especially his retainer as a consultant to VMW during this period . . . and 'his financial interest in a percentage of the sales made by Wirth." *See* Prosser, Law of Torts 786–790 (1971). Where the owner of a business turns it over to another for a percentage of future receipts, the law does not require silence when the former owner believes the business is being mishandled and his commissions may be correspondingly reduced. He has a qualified privilege to criticize his successor in order to protect his own interest in the venture.

This qualified privilege can be defeated only by showing not only that the statements made were false, but that they were motivated by malice, meaning either demonstrable ill-will or a reckless disregard for the truth. As the district court found, Wirth failed to make such a showing. Although there is some evidence in the record to suggest that Sunley made his accusations solely out of spite, this evidence is not so compelling that we can say that the district court's finding of no malice is "clearly erroneous." Sunley apparently believed that what he wrote was true. Even if what he wrote later proved to be false, he did not act with a reckless disregard for the truth, but rather, wrote only to VMW officials who could be relied upon to investigate every allegation before seeking yet another representative in the United States. Accordingly, we affirm the district court's dismissal of Wirth's affirmative defense based on Sunley's allegedly defamatory statements.

Sunley's qualified privilege to criticize Wirth applies equally to Wirth's counterclaim for libel. *Jiminez v. Maritime Overseas Corp.*, 360 F.Supp. 142, 146 (S.D.N.Y. 1973). Accordingly, we affirm the district court's dismissal of that counterclaim.

Reversed and remanded for further proceedings consistent with this opinion.