■ METAL & SALVAGE ASSOCIATION, INC., Respondent, v MICHAEL SIEGEL et al., Appellants.—Order of Supreme Court, New York County (Burton S. Sherman, J.), entered January 15, 1986, which, on reargument, adhered to a prior determination granting plaintiff a preliminary injunction, unanimously modified, on the law and facts and in the exercise of discretion, to the extent of striking from the prior order of September 10, 1985, decretal subparagraphs iii and iv in their entirety and "MSA's lists of customers and lists of vendors and supplies" from subparagraph i and "people to contact at MSA's customers" from subparagraph ii, and otherwise affirmed, without costs.

Plaintiff Metal & Salvage Association, Inc., is a broker in the salvage steel market, buying damaged or defective steel products and in turn reselling such material. Defendant Siegel was hired by plaintiff in 1980 and thereafter was promoted to president. He, in turn, hired defendant Tartar as a salesman. Neither had any written employment agreement, let alone one containing a restrictive covenant.

During Siegel's tenure, the sales of plaintiff corporation had grown to $3 million in 1984 and the corporation had 10 employees. While still president of plaintiff, on July 31, 1984, Siegel secretly incorporated defendant North American Metals Corp. In February of 1985, Siegel left the employ of

plaintiff. He was promptly joined by Tartar at North American Metals. It is undisputed that they engaged in active competition with the existing business of their former employer, Metal & Salvage.

On April 10, 1985, plaintiff commenced this action, apparently seeking only injunctive relief, and moved for a preliminary injunction. It obtained a preliminary injunction barring defendants from utilizing plaintiff's trade secrets including customer and supplier lists, metal preferences of and prices previously paid by plaintiff's customers and asked by plaintiff's suppliers, and barring defendants from contacting or doing business with any of the plaintiff's present customers or suppliers, including 21 specifically enumerated customer entities and 10 enumerated supplier entities, and requiring defendant Siegel to return to plaintiff all trade secrets and business records of plaintiff he took when he left plaintiff's employ.

Various issues were raised at Special Term which should have barred the grant of such a broad injunction barring defendants from doing business with any of plaintiff's customers and suppliers. Thus, solicitation of plaintiff's customers as a product of defendants' casual memory is permissible, given the absence of a restrictive covenant. *(Leo Silfen, Inc. v Cream,* 29 NY2d 387, 391.) Here, as noted, both defendants Siegel and Tartar were not even under contract, let alone a restrictive covenant. In addition, so long as the defendants did not use plaintiff's time, facilities or proprietary secrets to build a competing business, there was no illegality in the secret incorporation of North American Metals prior to their departure. *(See, Feiger v Iral Jewelry,* 85 Misc 2d 994, *affd* 52 AD2d 524, *affd* 41 NY2d 928.) Although plaintiff asserts that defendant utilized trade secrets in the form of appropriating confidential customer lists, injunctive relief will not issue unless the customers cannot be ascertained outside the plaintiff's business, are not known in the trade and are discoverable only by extraordinary efforts. *(See, Leo Silfen, Inc. v Creame, supra,* at p 392.)

In cases where plaintiff secures a customer's patronage through years of effort and advertising, there is a greater likelihood that the customer list will be found to be a trade secret. However, here there was no showing that plaintiff expended any sums on advertising or such efforts. No more than $150,000 was alleged to have been spent over a three-year period, without any specification as to how it was spent. In contrast, the defendants detailed how each customer they obtained was found, frequently by reference to a publicly

available source or prior existing trade or social contacts. In addition, it appears that the salvage steel trade does not involve long-standing, loyal customer and supplier relationships, but rather a series of "one-shot" transactions based upon the price of the item being offered. Accordingly, it was error to enjoin defendants from competing with plaintiff or from soliciting customers of plaintiff.

However, there was sufficient evidence in the record at Special Term that defendants appropriated deal files, i.e., records of suppliers' solicitations, plaintiff's bids and customer invoices, from plaintiff's offices and, accordingly, we modify solely to bar defendants' utilization of trade secrets and confidential information contained in such files and to require return of these business records to plaintiff. Concur—Kupferman, J. P., Sullivan, Ross, Asch and Rosenberger, JJ.