WALTER KARL, INC., Respondent, v ROBERT WOOD, Appellant.

Second Department, May 9, 1988

APPEARANCES OF COUNSEL

*Stephens, Buderwitz & Baroni (Joseph J. Buderwitz, Jr.,* and *Joseph M. Buderwitz* on the brief), for appellant.

*Smith, Ranscht, Pollock, Manos & Connors, P. C. (George A. Sirignano, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

WEINSTEIN, J.

Our focus on the instant appeal is directed to the propriety of granting a preliminary injunction against a former employee barring the employee from soliciting, servicing or doing business with customers of his former employer in violation of the terms of an alleged employment agreement. We find that the employer in the instant case was not entitled to injunctive relief with the result that the plaintiff's motion for a preliminary injunction should have been denied.

The plaintiff Walter Karl, Inc., is a New York corporation engaged in the business of mailing list brokerage, package and mail insert brokerage and list management services. The plaintiff's services are national in scope and are provided for the benefit of direct marketers who utilize the lists to ascertain the most likely customers for their goods and/or services. The list brokerage and management services aspect of the company assists customers in determining which lists are most appropriate for their use and arranges for the use of such lists, many of which are the property of other customers of the plaintiff. The package and mail insert brokerage division of the company exercises a similar function in arranging for the insertion of advertisements and solicitations in packages mailed and distributed by such entities as mail order houses.

In order to effectively manage its business and determine the best lists and advertising media for all of its clients, the plaintiff, at the time of the defendant's employment, maintained computer lists along with historical and customer data. Its customers numbered approximately 2,000. The plaintiff alleges that the needs of each of its customers are confidential, as are the names, addresses and other information maintained by the company with respect to those customers.

The defendant's employment with Walter Karl, Inc., commenced on or about November 4, 1974. He started as a mail room clerk and was employed in various capacities continuously through April 24, 1987, when he voluntarily resigned. At the time of his departure, the defendant was employed at will in the capacity of executive vice-president, package insert sales, at the annual salary of $350,000, plus benefits and bonuses.

During his tenure with the plaintiff, the defendant executed an employment agreement on or about December 2, 1982, which contained, *inter alia,* a provision prohibiting him from using, except in the course of his employment for the plaintiff, any information, documents or materials containing or relating to customer data or any materials, financial or otherwise, of the company which were of a confidential nature. The agreement further provided that upon leaving the plaintiff's employment, the defendant would not take with him, without the prior written consent of an officer specifically authorized to act in that matter by the board of directors, any company information. The aforesaid agreement, referred to as a "Golden Parachute" inasmuch as it provided for continued

executive compensation in the event of a change of ownership of the plaintiff corporation, was not to become operative unless and until there was a change in control of the company.

On or about September 22, 1986, the plaintiff sought to terminate all of the "Golden Parachute" agreements with its executives. The defendant claims to have met with Walter Karl, the company's founder, majority shareholder, president and chief operating officer, and to have executed a termination and release of all rights and obligations contained in the employment agreement dated December 2, 1982.* At the same time, the defendant negotiated a new salary arrangement for the calendar year 1987, since he was no longer under contract to the company. The defendant offered to purchase the Package Insert Division of the plaintiff company from Walter Karl. His attempt, while unsuccessful, prompted a promotion for him to president of the subject division and a proposed five-year employment agreement. The defendant maintains that the fact that Walter Karl proposed the five-year employment agreement is evidence that he was cognizant, at that time, that the parties were no longer bound by the December 2, 1982 agreement.

In 1986, five executives of the plaintiff company, including the defendant, sought to acquire the company from its founder. The defendant thereafter withdrew from the acquisition. The company was ultimately acquired by the remaining four executives in December 1986. The defendant's attempt to acquire the package and mail insert operations from the new owners was unsuccessful.

The defendant resigned from the plaintiff's employment on or about April 24, 1987, to engage in a business substantially similar to that of Walter Karl, Inc. According to the plaintiff, the defendant took several company employees with him to his newly formed company, Specialized Marketing, Inc. (hereinafter SMI), and he also took lists of customers from the plaintiff's records which he used in announcing the formation of his new business and to solicit customers therefor. The plaintiff further contends that some of the recipients of the defendant's business announcement were customers of the plaintiff with whom the defendant had had little or no contact and whose names and addresses must have been garnered

---

* The plaintiff asserted that the defendant merely signed and predated the termination agreement during the course of this litigation.

from computer lists which the plaintiff had developed over many years. Additionally, the defendant took with him some 16 to 20 confidential customer index cards maintained by the plaintiff pertaining to customers with whom the defendant had had regular contact. According to the plaintiff, three of its customers had canceled their previously placed orders with Walter Karl, Inc. in favor of doing business with the defendant's new enterprise.

In addition to improperly using confidential information to solicit company customers and diverting preexisting orders to his own business, the defendant is charged with disloyalty to the plaintiff from the time he withdrew from the acquisition venture. Specifically, it is charged that the defendant's new business was formed on or about February 2, 1987, at which time the defendant was still in the plaintiff's employ and that the defendant's productivity significantly decreased in the early months of 1987 as compared to his past performance.

Subsequent to the defendant's April 24, 1987 resignation from Walter Karl, Inc., the plaintiff commenced the instant action seeking, *inter alia,* to enjoin the defendant from doing business with its customers.

■ Although one of the theories asserted by the plaintiff was that the defendant had breached a written employment agreement entered into by the parties in 1982, we note preliminarily that the validity of that agreement constitutes a highly disputed issue of fact and, as such, cannot be the basis for injunctive relief *(see, Newco Waste Sys. v Swartzenberg,* 125 AD2d 1004, 1005; *Family Affair Haircutters v Detling,* 110 AD2d 745, 747). Moreover, it is clear from the record that the Supreme Court did not grant the plaintiff's motion on this basis. Rather, the court's granting of the preliminary injunction was based upon (1) the alleged breach by the defendant of his fiduciary duty to the plaintiff in the sense that the defendant, while he was still in the plaintiff's employ, purportedly established and engaged in a business which was in direct competition with the plaintiff, and (2) the defendant's use of the plaintiff's allegedly confidential customer list.

It is a well-settled tenet that in order to prevail on a motion for a preliminary injunction, the movant has the burden of demonstrating (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that a balancing of equities favors the movant's position *(see, Grant Co. v Srogi,* 52 NY2d 496,

517; *Family Affair Haircutters v Detling, supra,* at 747; *Gambar Enters. v Kelly Servs.,* 69 AD2d 297, 306). Viewed within this framework, we find that it was an abuse of discretion to grant the plaintiff's motion for a preliminary injunction.

It is fundamental that absent a restrictive covenant not to compete, an employee is free to compete with his or her former employer unless trade secrets are involved or fraudulent methods are employed *(see, Reed, Roberts Assocs. v Strauman,* 40 NY2d 303, *rearg denied* 40 NY2d 918; *Catalogue Serv. v Henry,* 107 AD2d 783; *accord, Zurich Depository Corp. v Gilenson,* 121 AD2d 443, 444). "Knowledge of the intricacies of a business operation does not necessarily constitute a trade secret and absent any wrongdoing it cannot be said that a former employee 'should be prohibited from utilizing his knowledge and talents in this area' " *(Catalogue Serv. v Henry, supra,* at 784, quoting from *Reed, Roberts Assocs. v Strauman, supra,* at 309). Nor will trade secret protection attach to customer lists where such customers are readily ascertainable from sources outside the former employee's business *(see, Catalogue Serv. v Henry, supra,* at 784; *Leo Silfen, Inc. v Cream,* 29 NY2d 387, 392) unless the employee has engaged in an act such as stealing or memorizing his employer's customer lists *(see, Greenwich Mills Co. v Barrie House Coffee Co.,* 91 AD2d 398, 402). Similarly, an employee's recollection of information pertaining to specific needs and business habits of particular customers is not confidential *(see, Catalogue Serv. v Henry, supra,* at 784; *Anchor Alloys v Non-Ferrous Processing Corp.,* 39 AD2d 504, 507, *lv denied* 32 NY2d 612).

Aside from the plaintiff's bare allegation that the defendant had improperly used the company's allegedly confidential customer list, the claim of confidentiality is unsupported. The plaintiff merely submitted the affidavits of its executives alleging that its list of customer names and usage information was confidential and known only to the plaintiff. In addition to disputing this claim outright, the defendant also submitted documentation which clearly tended to defeat the plaintiff's position. Specifically, the defendant submitted a copy of the "Research Projects Corp. Directory," a national publication containing names, addresses, rates, and other vital data on virtually all mail order houses and direct marketers in the country, including vital information on the specific clients referred to by the plaintiff in this lawsuit. The defendant also attached, *inter alia,* a copy of the Walter Karl, Inc. "Package

Insert Directory", which is issued annually by the plaintiff and reveals virtually all of the pertinent available information on its clients. A review of these documents certainly supports the defendant's contention that the data concerning which the plaintiff complains was freely disseminated by brokers, clients, list owners and managers, and program operators.

Additionally, the defendant presented direct evidence that this information played no part in his clients' decision to avail themselves of his services rather than continuing to do business with the plaintiff. The record contains letters from several clients indicating that the choice to switch their accounts from Walter Karl, Inc. to SMI was based upon the defendant's personal familiarity with and knowledge of their needs as well as his outstanding ability in the field.

Furthermore, while the defendant does not dispute the claim that SMI was incorporated in February 1987 it has been held, in this regard, that as long as a defendant does not use the plaintiff employer's time, facilities or proprietary secrets to build a competing business, there is no attendant illegality in the secret incorporation by the defendant of a new business prior to his or her departure from the plaintiff's employment (see, Metal & Salvage Assn. v Siegel, 121 AD2d 200, 201; see also, Feiger v Iral Jewelry, 85 Misc 2d 994, affd 52 AD2d 524, affd 41 NY2d 928). The record is devoid of any evidence establishing that the defendant or SMI conducted any business prior to April 24, 1987, the date on which the defendant left the plaintiff's employment.

Stated succinctly, notwithstanding the plaintiff's assertion that the defendant utilized trade secrets in the form of appropriating a confidential customer list, injunctive relief is unwarranted unless circumstances are such that the customers cannot be ascertained by persons outside the plaintiff's business or are not generally known in the trade and are discoverable only via extraordinary efforts (Metal & Salvage Assn. v Siegel, supra, at 201). None of the aforesaid circumstances prevail herein. Inasmuch as it is clear from the instant record that the plaintiff has not made the requisite evidentiary showing to justify the granting of such an extraordinary remedy, we conclude that the plaintiff's application for a preliminary injunction should have been denied.

Moreover, any claim that the plaintiff will suffer irreparable injury without the granting of a preliminary injunction or that a balancing of the equities favors the issuance of a

preliminary injunction must be rejected in view of the uncontradicted allegations that (1) the only business in which SMI is engaged is the package insert brokerage business, while Walter Karl, Inc. derives approximately 30% or less of its business from package insert brokerage, (2) some of the clients who chose to place their package insert business with SMI nonetheless remained with Walter Karl, Inc. for other services, and (3) some of the clients themselves would suffer the disruption of their businesses in the event that they did not wish to return to Walter Karl, Inc. and were forced to seek package insert brokerage services elsewhere *(see, Bruno Co. v Friedberg,* 21 AD2d 336, 341).

■ We note that the Supreme Court erred in failing to require that the plaintiff post an undertaking as a prerequisite to the granting of a preliminary injunction *(see,* CPLR 6312 [b]; *Family Affair Haircutters v Detling, supra; Catalogue Serv. v Henry, supra).*

■ In conclusion, "the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition" *(American Broadcasting Cos. v Wolf,* 52 NY2d 394, 404). The loss of an individual's livelihood should not be so easily jeopardized *(see, Purchasing Assocs. v Weitz,* 13 NY2d 267, 272, *rearg denied* 14 NY2d 584).

Accordingly, the order appealed from should be reversed, and the plaintiff's motion for a preliminary injunction denied.

BROWN, J. P., KOOPER and SULLIVAN, JJ., concur.

Ordered that the order is reversed, on the law, with costs, and the plaintiff's motion for a preliminary injunction is denied.