■ CONTEMPO COMMUNICATIONS, INC., Respondent, v MJM

---

CREATIVE SERVICES, INC., et al., Appellants.—Order of the Supreme Court, New York County (Martin Stecher, J.), entered September 12, 1990, which, *inter alia,* granted plaintiff summary judgment as to liability on its fifth cause of action, and denied defendants' cross-motion for summary judgment dismissing the complaint, is unanimously affirmed, without costs or disbursements.

At issue on this appeal is whether the IAS court erred in holding that a restrictive covenant in defendants' employment agreements was valid as a matter of law, and had been breached by the individual defendants.

Defendants Nolin and Wolkowitz were both employed by plaintiff Contempo in 1982 as "project managers" at an annual salary of approximately $30,000 each. Plaintiff Contempo, a New York corporation, is in the business of producing "multi-media" shows, including the creation of scripts, musical scores, and visual effects, for the use of its customers, primarily Fortune 500 companies, at their corporate meetings. As project managers, the individual defendants supervised production of shows for plaintiff's customers, and acted as liaisons between the plaintiff and its customers.

Approximately one year after the individual defendants began working for plaintiff, plaintiff, in order to reduce operating expenses, decided to merge sales and production into one position. Consequently, plaintiff terminated its sales staff and added sales responsibilities to the functions already performed by its producers. The producers were compensated for these extra activities by a Producer's Incentive Profitability Plan, whereby they were offered an opportunity to earn commissions on certain types of business which they secured for plaintiff.

Plaintiff maintains that since the merger of its sales and production functions would give its producers enormous leverage over the customers, it requested that its producers sign restrictive employment covenants. The individual defendants were therefore required to sign identical covenants on July 22, 1983, in connection with their new functions as sellers/producers. In pertinent part, the restrictive covenant provided: "Should your employment at Contempo terminate for any reason, you will, for a period of two years from date your employment ends, refrain from competing with Contempo with respect to any business or any account which Contempo has served or is serving *and* in which you have participated or in any way been active prior to the termination of your

employment. This, of course, only applies where your services or activities are substantially the same as, or directly related to the business in which Contempo has been engaged with respect to such business or accounts." (Emphasis added.)

On September 30, 1984, defendant Wolkowitz was terminated for reasons unclear on this record. According to plaintiff, upon his termination, defendant Wolkowitz was barred from soliciting or doing business with eight companies that he had previously serviced as an employee of the plaintiff for a two-year period.

Nolin voluntarily resigned on October 12, 1984, and according to plaintiff, by the terms of her restrictive employment agreement, was prohibited from doing business with four companies which she had serviced during her tenure at Contempo Communications.

On the day that defendant Nolin resigned, she, defendant Wolkowitz, and a third person formed defendant MJM Creative Services, Inc. MJM was formed to compete in the same business as plaintiff Contempo. It is undisputed that during the following two-year period, defendants worked with three of the allegedly prohibited customers and solicited an additional three by submitting proposals.

By virtue of these alleged breaches of the restrictive covenant, plaintiff Contempo alleges that it was deprived of gross billings exceeding $600,000 and accordingly commenced this action seeking injunctive relief and compensatory and punitive damages.

Plaintiff moved for partial summary judgment on the issue of liability. By cross-motion, defendants sought summary judgment on the issue of damages on the ground that plaintiff was operating at a loss, and therefore could not recover any damages representing lost profits.

Based upon defendants' admissions to obtaining employment with three of the prohibited companies and soliciting three others, the IAS court granted plaintiff summary judgment on its fifth cause of action, as to liability only, and severed the remaining causes of action.

Restrictive covenants relating to employment are disfavored at law, but such covenants will be enforced if reasonably limited in time and scope, to the extent necessary to protect the employer *(Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496). An employee's use or disclosure of trade secrets or confidential customer lists will be enjoined as will competition from an employee whose services were special,

unique or extraordinary *(Reed, Roberts Assocs. v Strauman,* 40 NY2d 303).

As found by the IAS court the restrictive covenant here was effective for only two years, and did not restrict the defendants from working or seeking employment in any geographical region. Further, defendants were not precluded from competing with the plaintiff, nor were they barred from soliciting those of plaintiff's clients for whom they had *not* worked, but were only barred from competing with those companies with whom they *had* worked prior to their termination.

We agree with the IAS court in its conclusion that the restrictive covenant was reasonable and necessary to protect the employer in view of the "special relationship" which developed between the individual defendants and their clients.

The restrictive covenant was reasonable as to time and scope *(Mallory Factor v Schwartz,* 146 AD2d 465). Further, it precluded defendants only from soliciting accounts that they had actively worked on while in the plaintiff's employ.

We do not agree with the plaintiff's contention that the special relationships which defendants formed with the customers for whom they worked as Contempo's employees qualified for protection as "trade secrets."

However, there was sufficient proof on the record to show that the services of defendants vis-à-vis the companies they serviced as plaintiff's employees were "special, unique and extraordinary" and therefore, entitled to protection *(see, Reed, Roberts Assocs. v Strauman, supra).* Concur—Murphy, P. J., Wallach, Kupferman, Asch and Smith, JJ.