■ INVESTOR ACCESS CORP., Appellant, v DOREMUS & CO., INC., et al., Respondents.—Judgment of the Supreme Court, New York County (Harold Baer, Jr., J.), entered January 18, 1991 which, insofar as appealed from, dismissed plaintiff's complaint after a nonjury trial, affirmed, without costs.

This action was commenced by plaintiff Investor Access Corp. ("IAC") against its former employee, defendant Robert Ferris, and his present employer, Doremus & Co., Inc., seeking equitable relief and monetary damages arising out of the asserted breach of plaintiff's employment agreement with Ferris, which includes a noncompetition covenant. The complaint states that Crossland Savings, FSB engaged plaintiff to render public relations and investor relations services; that defendant Ferris was the senior account executive on the Crossland account; that on or about February 11, 1988, Ferris left its employ to become vice president of Doremus; that in or about May 1988, Crossland informed plaintiff that it would take its account to a larger firm; and that, in or about June 1988, Crossland became a client of Doremus. The gravamen of the complaint is that Ferris "breached his contract with IAC in becoming an employee of Defendant Doremus and in servicing Crossland as a client of Defendant Doremus, in soliciting Crossland and procuring and securing Crossland as a client for Defendant Doremus, either during his employment with IAC or within twelve months of his departure."

In connection with his employment by plaintiff, Ferris signed an agreement not to compete with plaintiff which

provides, in material part: "Should you cease to be an employee of Investor Access, for a twelve month period thereafter: a) You will not work in an external public relations or investor relations capacity for any company that is a client of Investor Access at the time of your departure or has been a client at any time during the twelve months prior to your departure; b) You will not solicit any organization that is then or that has been a client or prospect of Investor Access during the twelve months prior to your departure". Following a bench trial, Supreme Court held that the restrictive covenant is unenforceable.

Plaintiff's appellate brief is largely devoted to the attempt to demonstrate that its restrictive employment agreement is consistent with the public policy of this State as reflected in various appellate decisions. Plaintiff takes the position that, upon termination of his employment, Ferris was prohibited from soliciting *or servicing* any organization that was its client or prospective client during the twelve-month period prior to the date Ferris terminated his employment with plaintiff. While plaintiff advances both subdivisions a) and b) of the restrictive employment agreement as the basis for recovery, it avoids stating the precise language relied upon. In its brief, however, plaintiff cites this Court's decisions in *Mallory Factor v Schwartz* (146 AD2d 465, involving protection of trade secrets) and *Mallory Factor v Jicka* (168 AD2d 344, citing *Mallory Factor v Schwartz, supra)* in support of its claim for damages. In both cases, we upheld covenants providing that an employee would not *solicit* clients of his former employer for a limited period (18 and 24 months, respectively) following the termination of his employment.

The leading case in this area is *Reed, Roberts Assocs. v Strauman* (40 NY2d 303), which this Court construed in *Gaynor & Co. v Stevens* (61 AD2d 775) to render an agreement not to " 'solicit, divert or take away' any of plaintiff's customers * * * unenforceable as a matter of law against a former employee unless (1) his services were 'unique' or 'extraordinary', or (2) to prevent his disclosure or use of trade secrets or confidential information *(Reed, Roberts Assoc. v Strauman, supra,* p 308)" *(see also, Garfinkle v Pfizer, Inc.,* 162 AD2d 197).

The Appellate Division, Second Department adopted this reasoning in *Greenwich Mills Co. v Barrie House Coffee Co.* (91 AD2d 398) which contains an informative discussion of the competing policy considerations in this area (91 AD2d, *supra,* at 400) and of the application of the ruling in *Reed, Roberts (supra)* to various situations. The opinion concludes that even

a mere nonsolicitation agreement, otherwise reasonable in scope, is unenforceable as a matter of law unless necessary to protect trade secrets of the former employer (91 AD2d, *supra,* at 402-403).

In view of Supreme Court's explicit factual finding, after trial, that "Ferris did not solicit Crossland", which is not unreasonable under a fair interpretation of the evidence presented *(Claridge Gardens v Menotti,* 160 AD2d 544; *see also, Nightingale Rest. Corp. v Shak Food Corp.,* 155 AD2d 297, *lv denied* 76 NY2d 702), it avails plaintiff little to establish that this covenant, subdivision b) of the restrictive employment agreement, is enforceable. If recovery is available, it must therefore be premised on subdivision a) of the agreement, relating to restrictions on the type of work Ferris could perform after leaving plaintiff's employ. This covenant prohibits "work in an external public relations or investor relations capacity for any company that is a client of Investor Access" on the date employment ceased or within the preceding 12 months. The language can fairly be said to preclude Ferris from serving as an account representative for Crossland Savings, FSB, while in the employ of Doremus, as plaintiff contends.

*Greenwich Mills Co. v Barrie House Coffee Co.* (91 AD2d 398, 402, *supra)* noted that "a broad noncompetition covenant, as opposed to a less restrictive nonsolicitation covenant, will also not be enforced absent some circumstances such as the employee's possession of a trade secret * * * or some unique or extraordinary ability or skill of the employee" (citations omitted). The question remains whether a *limited* noncompetition agreement, such as the one at bar, can be enforced in the absence of circumstances evincing a need for the protection of the former employer. We conclude that it may not.

We can discern no qualitative difference between a mere nonsolicitation covenant and a limited noncompetition covenant which warrants inconsistent treatment *(see, Purchasing Assocs. v Weitz,* 13 NY2d 267). If an employer must demonstrate special circumstances in order to enforce a covenant against mere solicitation of its clients, it follows that it must establish no less in order to enforce a covenant against performing services for those clients *(Family Affair Haircutters v Detling,* 110 AD2d 745) which is, after all, only the logical result of successful solicitation. The policy considerations are exactly the same. As the Court of Appeals stated in *Reed, Roberts Assocs. v Strauman* (40 NY2d, *supra,* at 307), "no restrictions should fetter an employee's right to apply to his

own best advantage the skills and knowledge acquired by the overall experience of his previous employment." Restrictions are justified only when necessary to protect the former employer "against deliberate surreptitious commercial piracy" (40 NY2d, *supra,* at 308).

It is significant that Supreme Court found that the loss of the Crossland account by plaintiff was inevitable, the result of "self-inflicted wounds", rather than a result of commercial piracy by Ferris. The court determined that "Crossland had decided to terminate its connection with IAC before it approached Ferris to offer the account and it would have left IAC even if Ferris had not been available." Supreme Court found that Ferris was not in possession of any trade secret, and it is not contended that his skills are in any way unique or extraordinary *(compare, Contempo Communications v MJM Creative Servs.,* 182 AD2d 351).

That Crossland sought out Ferris and took its account to Doremus in order to avail itself of his services is not dispositive. Case law reflects "general judicial disfavor of anticompetitive covenants contained in employment contracts" *(American Broadcasting Cos. v Wolf,* 52 NY2d 394, 404) and "the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition" *(supra,* at 404). It is well settled that "an employee's recollection of information pertaining to specific needs and business habits of particular customers is not confidential" *(Walter Karl, Inc. v Wood,* 137 AD2d 22, 27, citing *Catalogue Serv. v Henry,* 107 AD2d 783, 784; *Anchor Alloys v Non-Ferrous Processing Corp.,* 39 AD2d 504, 507, *lv denied* 32 NY2d 612). In *Walter Karl (supra,* at 28), the Court emphasized that the decision of certain of plaintiff's clients to transfer their accounts to a company formed by its former employee "was based upon the defendant's personal familiarity with and knowledge of their needs as well as his outstanding ability in the field."

Plaintiff attempted to demonstrate that the loss of the Crossland account was the result of commercial piracy by Ferris and Doremus. Supreme Court reached the conclusion that it was not, and we perceive no basis upon which to upset that factual determination. Concur—Milonas, J. P., Ross, Asch and Rubin, JJ.

Kupferman, J., dissents in a memorandum as follows: I would reverse.

The individual defendant was the senior account executive

on the Crossland account. He signed an agreement with the plaintiff, which stated: "You will not work in an external public relations or investor relations capacity for any company that is a client of Investor Access at the time of your departure or has been a client at any time during the twelve months prior to the date of your departure".

Crossland clearly comes within that provision. Who solicited whom is completely irrelevant. The covenant was reasonable in its application.

The decision here is not only wrong, it is inconsistent with our recent decision in *Contempo Communications v MJM Creative Servs.* (182 AD2d 351, *rearg or lv denied* App Div, 1st Dept, June 9, 1992).