Steven **SINGER** and Dulce Reyes Singer, Plaintiffs,

v.

Emily Singer **BELL**, Michael Bell, Sheldon M. Liebowitz, Liebowitz and Clark, Esqs., a Partnership, Ron Bellistri, Gary "Doe", Richard "Doe", "John Doe # 1", "John Doe # 2", and the Sheriff's Department of Bergen County, New Jersey, Defendants.

No. 83 Civ. 5765.

United States District Court, S.D. New York.

April 20, 1984.

Eagle & Fein, New York City, for plaintiff; Jonathan J. Braverman, New York City, of counsel.

Wolfe, Yukelson & Adler, New York City, for defendants Liebowitz and Liebowitz, Liebowitz & Clark; Harvey G. Wolfe, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Defendants Sheldon Liebowitz and the partnership of Liebowitz, Liebowitz & Clark, Esqs. move to dismiss this action upon the ground that this Court has no personal jurisdiction over them. The motion is granted.

Plaintiffs, Steven Singer and his current wife, Dulce Singer, are New York residents. Defendants, all of whom are New Jersey residents, are Mr. Singer's ex-wife, Emily Singer Bell; her current husband, Michael Bell; the Bell's attorney, Sheldon Liebowitz, and his firm, Liebowitz, Liebowitz & Clark, Esqs.; Ron Bellistri; the Bergen County New Jersey Sheriff's Department; two unnamed sheriffs; and two other unnamed men.

This action had its origin in matrimonial litigation begun in the early 1970's in the state courts of New Jersey. In November, 1972, Emily Singer (Bell) was awarded a divorce from the plaintiff, Steven Singer ("Singer"), in an action in which she was represented by the Liebowitz, Liebowitz & Clark firm. The divorce decree required Singer to make weekly child support payments to Emily Singer Bell for the benefit of the three children of their marriage. Singer failed to make the required payments, and in 1980, upon the application of Emily Singer Bell, the Superior Court of New Jersey ordered him to pay arrearages of $48,031 to his former wife. Subsequently, Emily Singer Bell, through her attorneys, defendant Liebowitz and his firm, procured a warrant for Singer's arrest from the Honorable Harvey Sorkow, a Judge of the Superior Court of New Jersey.

There is no dispute that the arrest warrant was properly issued to enforce the payment of arrearages Singer admits he owes. The dispute arises over the manner

in which the warrant was executed. According to the Singers' complaint, after the warrant was issued, defendant Ron Bellistri contacted Singer about a possible business opportunity, and invited him to a meeting in New Jersey to discuss the transaction. Bellistri and defendant "Gary Doe" then allegedly met Singer in New York, and defendant "Roe" drove Singer, Bellistri and Doe to New Jersey for the purported meeting. Upon their arrival at the meeting place in New Jersey, Singer alleges that he was met by John Doe #1 and John Doe #2, who stated that they were deputies of the Bergen County Sheriff's Department and proceeded to arrest and search Singer. Singer was jailed overnight, but released by Judge Sorkow of the Superior Court the next morning, after Emily Singer Bell admitted that she had lured her former husband into New Jersey for the purpose of executing the warrant.[1]

Plaintiffs allege that defendants' conduct subjected Singer to an unreasonable search and seizure, in violation of the Fourth and Fourteenth Amendments to the United States Constitution; deprived him of life, liberty, and property without due process, in violation of the Fifth and Fourteenth Amendments; and denied him equal protection of the laws, in violation of the Four-teenth Amendment. They allege that the defendants conspired to so deprive plaintiffs of their civil rights, in violation of 42 U.S.C. § 1985, and that they acted under color of state law in depriving plaintiffs of their civil rights, in violation of 42 U.S.C. § 1983. Singer seeks compensatory and punitive damages, and his wife seeks compensatory damages for emotional distress and loss of consortium.

Defendant Liebowitz and the Liebowitz firm assert that they are not subject to personal jurisdiction in New York, because they do no business in New York, and had no contacts with this state with respect to this action. Liebowitz states that neither he nor any member of the firm participated in luring Singer into New Jersey, or even learned of the scheme until after Singer was arrested. Plaintiffs argue, however, that Liebowitz and the firm are subject to jurisdiction under New York Civ.Prac.Law § 302(a)(2) or (3),[2] because they conspired with defendants Bellistri, Roe and Gary Doe, who allegedly committed acts in New York in furtherance of the conspiracy.

■ It is well established that "the acts of a co-conspirator may be attributed to a defendant for the purpose of obtaining personal jurisdiction over the defendant."[3] However, "the bland assertion of conspir-

1. In releasing Singer, Judge Sorkow stated: "rather a defaulting and absconding debtor be free than this court become a party to participation in a scheme based on 'dirty tricks[.]'" *Singer v. Singer*, No. M–10581–72, slip op. at 2–3, (N.J.Super.Ct.Ch.Div. August 11, 1982).

2. N.Y.Civ.Prac.Law § 302(a)(2) and (3) (McKinney Supp.1983) state:
(a) *As to a cause of action arising from any of* the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ... who in person, or through an agent:
(2) commits a tortious act within the state ...
(3) commits a tortious act without the state causing injury to person or property within the state, ... if he
(i) *regularly does or solicits business, or en*gages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ....

3. *Louis Marx & Co. v. Fuji Seiko Co.*, 453 F.Supp. 385, 391 (S.D.N.Y.1978). *See also, Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir.1975); *Mandaglio v. United Bhd. of Carpenters and Joiners of America*, 528 F.Supp. 468, 471 (E.D.N.Y.1981); *Dixon v. Mack*, 507 F.Supp. 345, 348 (S.D.N.Y.1980); *Clark v. United States*, 481 F.Supp. 1086, 1096–97 (S.D.N.Y.1979); *Chemical Bank v. World Hockey Ass'n*, 403 F.Supp. 1374, 1379 (S.D.N.Y.1975); *Ghazoul v. International Management Servs., Inc.*, 398 F.Supp. 307, 312 (S.D.N.Y.1975); *Socialist Workers Party v. Attorney General*, 375 F.Supp. 318, 321–22 (S.D.N.Y.1974); *Reeves v. Phillips*, 54 A.D.2d 854, 388 N.Y.S.2d 294 (1st Dep't 1976); *American Broadcasting Co. v. Hernreich*, 40 A.D. 800, 338 N.Y.S.2d 146 (1st Dep't 1972) (alternative holding); *Lamarr v. Klein*, 35 A.D.2d 248, 315 N.Y.S.2d 695 (1st Dep't 1970), *aff'd*, 30 N.Y.2d 757, 333 N.Y.S.2d 421 (1972).

acy or agency is insufficient to establish jurisdiction." [4]  Instead, plaintiffs must make a *prima facie* showing of conspiracy.[5]  They must allege specific facts warranting the inference that the defendants were members of the conspiracy,[6] and "come forward with some definite evidentiary facts to connect the defendant with transactions occurring in New York." [7]

■ Plaintiffs have not met their burden.  Their complaint mentions Liebowitz and the firm only three times: in the caption; in paragraphs 3 and 4, which describes the defendants and states the location of their office; and in paragraph 21, which states that Liebowitz and the firm procured the warrant for Singer's arrest. Plaintiffs' affidavit in opposition to the motion to dismiss offers only two "facts" in support of the contention that Liebowitz and the firm were members of the conspiracy.  First, Singer states that it is probable that Liebowitz has not been paid for his services to Emily Singer Bell, and that he therefore had a financial interest in bringing Singer to New Jersey "to [be] held as a hostage for ransom."  Second, Singer asserts that Liebowitz misrepresented Singer's financial position to Judge Sorkow during the hearing following Singer's arrest and therefore "exceeded the bounds of representation of his client."  The memorandum of law submitted on Singer's behalf argues in addition that Liebowitz's membership in the conspiracy is indicated by the fact that he was available to represent Emily Singer Bell at the hearing following the arrest, and by the fact that she must

have been introduced to Bellistri, Gary Doe and Roe by someone.

None of the plaintiffs' assertions establish a *prima facie* showing that Liebowitz or his firm were members of the alleged conspiracy.  The mere professional relationship between Liebowitz and Emily Singer Bell is insufficient to support an inference that Liebowitz participated in her schemes.[8]  Nor is the fact that he was available to represent her at the hearing following the arrest indicative that he played some role in her alleged conspiracy. He was, after all, her lawyer, and it is hardly unusual for a lawyer to be called on short notice to aid a client.  The allegation that Liebowitz must have participated in the alleged conspiracy because he might not be paid for his services unless Emily Singer collects the arrearages is conjectural and without evidentiary support.  Similarly, the assertion that Emily Singer Bell must have met Bellistri, Gary Doe and Roe through someone, therefore she must have met them through Liebowitz, lacks both logic and a factual foundation.

It is true that a conspiracy can rarely be proved by direct evidence, and is instead "usually established by circumstantial evidence based upon independent proof of each alleged co-conspirator's acts, conduct and statements and the totality of conduct of all the participants and the reasonable inference to be drawn therefrom." [9]  Here, plaintiff's allegations are based on neither direct nor circumstantial evidence, nor reasonable inference therefrom, but on mere speculation and conjecture.[10]  More is re-

**4.** *Lehigh, supra* note 3, at 93–94; *Clark, supra* note 3, at 1097; *Louis Marx & Co., supra* note 3, at 391.

**5.** *Dixon, supra* note 3, at 348.

**6.** *Id.  See also Louis Marx & Co., supra* note 3, at 391–92.

**7.** *Socialist Workers Party, supra* note 3, at 322.

**8.** *See, e.g., Lehigh, supra* note 3, at 93 (fact that moving defendant was the brother and business associate of an alleged co-conspirator held in-

sufficient to establish a *prima facie* showing of conspiracy); *Louis Marx & Co., supra* note 3, at 391–92 (fact that alleged co-conspirators had a business relationship was insufficient to establish a *prima facie* showing of conspiracy).

**9.** *United States v. Kahaner,* 203 F.Supp. 78, 84 (S.D.N.Y.1962).  *See also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983).

**10.** *See Socialist Workers Party, supra* note 3, at 325.

quired to justify the assertion of jurisdiction over Liebowitz and his firm.[11]

 Apparently recognizing that their showing is woefully inadequate, plaintiffs argue that they should not be required to make a *prima facie* showing of conspiracy until they have had an opportunity for discovery. The New York Court of Appeals has held that if plaintiffs have "made a sufficient start, and shown their position not to be frivolous" they should be afforded an opportunity for discovery before the Court decides the motion to dismiss for lack of personal jurisdiction.[12] Here, however, as indicated previously, plaintiffs have come forward with no evidence linking Liebowitz and the firm to the alleged conspiracy, other than the allegations of guilt by association, and therefore cannot be said to have made the "sufficient start" required to justify discovery.[13] The discovery rules "are not a hunting license to conjure up a claim that does not exist."[14] As Judge Griesa has stated:

> To compel a defendant to remain in an action during discovery ... is an assertion of jurisdiction to some extent—and no trivial burden in a substantial case. Surely a plaintiff must make some specific factual showing in order to assert such jurisdiction. A plaintiff cannot be permitted to effect service of process on an out-of-state defendant on the mere basis that such plaintiff hopes somehow

and somewhere to find enough facts to create grounds for jurisdiction.[15]

The motion of defendant Liebowitz and Liebowitz, Liebowitz & Clark, Esqs., is granted, and the action is dismissed as against them, for lack of personal jurisdiction.

SO ORDERED.

**11.** *See, e.g., Dixon, supra* note 3, at 348; *Clark, supra* note 3, at 1097; *Ghazoul, supra* note 3, at 312–13.

**12.** *Peterson v. Spartan, Inc.,* 33 N.Y.2d 463, 467, 354 N.Y.S.2d 905, 908, 310 N.E.2d 513 (1974). *See also Amigo Foods Corp. v. Marine Midland Bank,* 39 N.Y.2d 391, 396, 384 N.Y.S.2d 124, 126–127, 348 N.E.2d 581 (1976).

**13.** *See, e.g., Nemetsky v. Banque de Development,* 64 A.D.2d 694, 407 N.Y.S.2d 556 (2d Dep't 1978), *aff'd,* 48 N.Y.2d 962, 425 N.Y.S.2d 277, 401 N.E.2d 388 (1979) (refusing to allow discovery where plaintiff's only evidence of agency was an assertion that the foreign defendant and its alleged agent had a close relationship and "special kinship"). This disposition makes it unnecessary for the Court to reach the issue of whether *Peterson, supra* note 12, and *Amigo, supra* note 12, modify the rule of *Lehigh, supra*

note 3, that plaintiff may be required to establish a *prima facie* showing of conspiracy before discovery has been completed in order to survive a motion to dismiss for lack of jurisdiction.

**14.** *Samuels v. Eleonara Beheer, B.V.,* 500 F.Supp. 1357, 1362 (S.D.N.Y.1980), *aff'd,* 661 F.2d 907 (2d Cir.1981). In addition, plaintiffs fail to recognize that the information they seek may be unavailable because of the attorney-client privilege unless plaintiffs could make a *prima facie* showing that Emily Singer Bell sought Liebowitz's advice in furtherance of a plan for future wrongdoing. *Clark v. United States,* 289 U.S. 1, 15 (1933); *Matter of Doe,* 551 F.2d 899, 900–901 (2d Cir.1977); *In re Grand Jury Subpoenas dated December 18, 1981 and January 4, 1982,* 561 F.Supp. 1247, 1254 (E.D.N.Y.1982).

**15.** *Socialist Workers Party, supra* note 3, at 325.