UNIVERSAL MARINE MEDICAL SUPPLY, INC., Plaintiff,

v.

George LOVECCHIO, Waldemar Musial, Michelle Bellore, Fleet Medical Resources, Inc., and Marine Medical Unit, Inc., Defendants.

No. 98 Cv. 3495.

United States District Court, E.D. New York.

June 30, 1998.

**216**

John P. Gulino, Staten Island, NY, for Plaintiff.

Michael R. Hepworth, Piper & Marbury, New York City, for Defendants.

## MEMORANDUM & ORDER

GLASSER, District Judge.

### BACKGROUND

Plaintiff Universal Marine Medical Supply, Inc. ("Universal") is a New York corporation with its place of business in Brooklyn. Compl. ¶ 1. Universal has been engaged in the business of selling medical supplies for over 23 years. Defendants George Lovecchio ("Lovecchio"), Waldemar Musial ("Musial"), and Michelle Bellore ("Bellore"), all of whom now reside in Louisiana, are former employees of plaintiff. Musial was employed by Universal as its Corporate Director and Company Supervisor. His responsibilities included purchasing inventory, warehouse inventory control, computer analysis, distribution of all international and domestic shipments, direct contract with clients and vendors, and obtaining quotes and bids. Compl. ¶ 11. Bellore was employed as plaintiff's Account Manager, and her duties included "maintaining Plaintiff's accounts, placing orders and quotations in the computer, following up on shipments, researching customer inquiries, executing narcotic invoices, printing and distributing narcotic consumption reports, entering information for quarterly AROCS reports, and keeping records of returns." Compl. ¶ 12. Defendant Lovecchio was the sole owner of a corporation, Diversified Marketing Group, that was engaged in the sale of medical supplies to the maritime industry. In December of 1994, Lovecchio entered into a contract with Universal to act as Universal's sales and marketing representative. In this capacity, Lovecchio was responsible for handling all sales for current and potential clients. Compl. ¶ 13.

Plaintiff alleges that defendants Lovecchio, Musial, and Bellore "conspired together and engaged in a course of action designed to destroy the business reputation of [Universal] and to enable said defendants to divert the business of [Universal] to their personal benefit." Compl. ¶ 10. Plaintiff claims that

Musial deliberately changed the vendors from whom Universal purchased at competitive prices to vendors who sold their goods at higher prices in order to decrease plaintiff's profits and competitive position; deliberately purchased items that "turned over slow in order to tie up cash flow with in-stock merchandise"; deliberately purchased and approved the shipping of "short dated" merchandise; deliberately purchased wrong items in order to create chaos after his departure and to increase expenses when the correct items had to be purchased at greater prices in order for them to be received in time to meet shipping deadlines; deliberately delayed purchases to ensure large back orders and incur additional shipping expenses; "deliberately waited until quote deadlines to dilute service"; destroyed company equipment; erased important information from computer files; falsified records; deliberately provided vessels with "minimum quantities rather than the full quantity required"; misappropriated to his own use confidential information and trade secrets, including company files, customer lists, corporate operating procedures, price catalogs, and vendor contracts; diverted approximately $80,000 worth of merchandise to his own use; deliberately failed to send returned items to the manufacturers for credit in order to harm plaintiff, thereby causing plaintiff losses of approximately $50,000; deliberately sent incorrect items to plaintiff's main accounts to destroy plaintiff's reputation; and conspired with defendants Bellore and Lovecchio to divert business from plaintiff to competitors in New Orleans.

Plaintiff further alleges that Bellore deleted important narcotic/controlled substance records required by federal law for DEA reporting; deliberately sabotaged monthly reports and records; submitted incorrect reports to federal authorities; deliberately withheld documents in order to injure plaintiff's reputation; deliberately delayed in responding to customer research inquiries; and deliberately delayed order quotation to give competitors of plaintiff "an edge." Compl. ¶ 15.

On December 26, 1997, defendants Musial and Bellore left their employment with plaintiff and went to work at defendants Marine Medical Unit, Inc. ("Marine") and Fleet Medical Resources, Inc. ("Fleet").[1] Lovecchio remained in plaintiff's employ and continued to conspire with defendants Bellore and Musial by calling plaintiff's clients and telling them that Bellore and Musial's company had much better service and pricing than plaintiff and otherwise disparaging plaintiff.

In February of 1998, Lovecchio announced his resignation. On February 27, 1998, plaintiff agreed to make certain payments to Lovecchio and Lovecchio agreed, *inter alia*, not to interfere with Plaintiff's employees or customers, not to compete with plaintiff, and not to be associated in any way with Musial. However, in violation of this agreement, Lovecchio entered into employment with Bellore and Musial at their competing company. Compl. ¶ 18.

Plaintiff then filed this lawsuit claiming: breach of fiduciary duty by defendants Musial, Bellore, and Lovecchio, tortious interference with business relations against defendants Musial, Bellore, Lovecchio, and Marine Medical; breach of contract against all of the defendants; and misappropriation of confidences and secrets against all of the defendants.

Plaintiff also filed a motion for a temporary restraining order, which was denied by Judge Gershon on May 8, 1998. Plaintiff then filed a motion for a preliminary injunction, requesting that this court enjoin defendants from utilizing confidential information obtained from Universal and from disparaging Universal to its customers, past or present. That motion was denied by this court at oral argument on June 26, 1998. Defendants, in turn, have filed a motion to dismiss plaintiff's complaint.

---

1. Tchoupitoulas Street Wharf, Inc., does business as "Marine Medical Unit." Marine was formed approximately twenty years ago. Fleet was formed in September of 1997 and currently operates out of a trailer office located behind Marine's medical clinic. Both Tchoupitoulas and Fleet are owned by J. Carlyle Smith. *See* Smith Aff. ¶¶ 1, 2, 7 (attached to Defs' Notice of Motion to Dismiss).

## DISCUSSION

### Defendants' Motion to Dismiss

#### Lack of Personal Jurisdiction

Defendants' argue that all claims against Fleet and Marine should be dismissed for lack of personal jurisdiction.

> In deciding a pretrial motion for jurisdiction, a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.

*Champion Motor Group, Inc. v. Visone Corvette of Massachusetts, Inc.*, 992 F.Supp. 203, 205 (E.D.N.Y.1998) (quoting *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (internal quotation marks omitted)). This court has chosen not to conduct an evidentiary hearing and thus it will rely on plaintiff's affidavits. In analyzing the affidavits, the facts are to be construed in the light most favorable to the plaintiff. *Id.* (citing *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993)).

Personal jurisdiction of a federal court over a non-domiciliary is determined by the law of the state in which the federal court sits. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–25 (2d Cir.1963). New York Law on personal jurisdiction is codified in CPLR §§ 301 and 302.

Section 301 provides for general jurisdiction over a non-domiciliary defendant where that defendant is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of [its] presence in this jurisdiction." *Beacon Enter., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983) (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427 (N.Y.1964)). "The non-domiciliary must be doing business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* Here, there is no allegation that the corporate defendants "do business" in New York. Thus, there is no general jurisdiction over these defendants.[2]

Plaintiff, however, may also invoke New York's long-arm statute, set forth in CPLR § 302, to assert specific jurisdiction over the defendants. Section 302(a) provides in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state ... if he
>
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> >
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

Plaintiff argues that this court does have personal jurisdiction over the corporate defendants because Fleet was formed in September of 1997, at the time Musial and Bellore claim they formed their intention to leave Universal. From that time through December of 1997, Musial and Bellore engaged in tortious conduct in New York on

---

**2.** The owner of both Fleet and Marine states in an affidavit that neither company has an office, employees, mailing address, telephone listing, bank account, or property in New York. Although Marine did, prior to September 1997, provide medical advice to companies based in New York and occasionally sold medical supplies to companies based in New York, it was not doing so at the time this lawsuit was filed.

behalf of Fleet and "continued the effort to interfere with Plaintiff's business from Louisiana." Thus, plaintiff asserts, these facts demonstrate, *prima facie*, that Fleet committed tortious acts in New York through Musial and Bellore. There is also personal jurisdiction over Marine because Marine is owned by the same person as Fleet and has "participated in the conspiracy by placing Lovecchio on its payroll to avoid the appearance of violation of Lovecchio's non-compete agreement. Marine is also chargeable with the acts of its co-conspirators in New York and subject to jurisdiction here." Pl. Opp.Mem. of Law 2.

■ "Acts committed in New York by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject that out-of-state defendant to jurisdiction in New York under § 302(a) of the CPLR." *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, 1996 WL 437907 * 6 (S.D.N.Y. Aug.2, 1996) (citing *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir. 1975); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260 (S.D.N.Y. 1991); *Singer v. Bell*, 585 F.Supp. 300, 302 (S.D.N.Y.1984)). Nevertheless, "[t]he bland assertion of a conspiracy or agency ... is insufficient to establish jurisdiction." *Id.* (citing *Lehigh Valley Industries, Inc.*, 527 F.2d at 93–94; *Singer*, 585 F.Supp. at 303). Rather, "[t]o establish jurisdiction on the basis of an alleged conspiracy, plaintiffs must allege facts demonstrating prima facie conspiracy, and must allege facts warranting the inference that the defendants were members of the conspiracy." *Id.* (citing *Singer*, 585 F.Supp. at 303; *Dixon v. Mack*, 507 F.Supp. 345, 348 (S.D.N.Y.1980)).

■ Plaintiff has failed to meet this burden as it has provided no facts to suggest that Fleet was a co-conspirator of defendants Musial and Bellore. Surely the fact that Fleet's incorporation was contemporaneous to this alleged conduct by Musial and Bellore does not establish a prima facie showing of a conspiracy. Finally, even were it true that Marine has placed Lovecchio on its payroll

solely in order to avoid the appearance that defendant was working with Musial, such activity has occurred in Louisiana, not New York. Therefore, this court does not have personal jurisdiction over the corporate defendants and all claims against Fleet and Marine are dismissed.

*Venue*

Defendants also argue that plaintiff's claims for tortious interference and misuse of confidential information should be dismissed for improper venue because all of the alleged events upon which these claims depend occurred in Louisiana, where all defendants reside.[3]

■ Plaintiff bears the burden of establishing that venue is properly laid in the district in which the complaint was filed. *See Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 182 (S.D.N.Y.1995). The venue rule in diversity cases appears in 28 U.S.C. § 1391(a), which states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

"In the case of multiple claims, proper venue must be established with respect to each cause of action asserted." *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F.Supp. 731, 736 (S.D.N.Y.1996) (citing *PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 757 (S.D.N.Y.1995); *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 1994 WL 74860 at *3 (S.D.N.Y. Mar.7, 1994)). "Venue

---

3. Defendants admitted at oral argument that the Eastern District of New York is the proper venue for plaintiff's breach of contract claim. Defen-

dants have not challenged venue for plaintiff's breach of fiduciary duty claim.

is proper in each district that is the situs of a substantial part of the events or omissions giving rise to the claim." *PI, Inc. v. Quality Products, Inc.,* 907 F.Supp. 752, 757 (S.D.N.Y.1995). Thus, the fact that venue may be proper in Louisiana does not preclude a finding that venue is also proper in New York.

Plaintiff's tortious interference claim states that "[t]he wrongful means employed by Defendants include false and disparaging statements made about Plaintiff to customers, the misappropriation of confidential customer and pricing information, and the acts of employee disloyalty hereinabove set forth." Compl. ¶ 23. The majority of the relevant acts enumerated in plaintiff's complaint occurred in New York. Therefore, venue on this claim is proper in the Eastern District of New York.

Plaintiff's final cause of action is for "misappropriation of confidences and secrets." Plaintiff states in its complaint that "Defendant Musial, while still in the employ of Plaintiff and in conspiracy with defendant Bellore and Lovecchio, wrongfully copied Plaintiff's customer lists and other confidential and secret information for the purpose of utilizing that information to deprive plaintiff of business. Defendant Fleet, MMU, Bellore and Lovecchio, knowing of the wrongful acquisition of this confidential and secret information, have utilized that information in diverting business from Plaintiff." Compl. ¶¶ 33, 34. The gravamen of a complaint for misappropriation is the wrongful taking of a trade secret, which allegedly occurred in New York. Thus, venue is proper for this claim in the Eastern District of New York.

### Failure to State a Claim

Finally, defendants argue that plaintiff's claims for tortious interference, breach of contract, and misuse of confidential information should be dismissed for failure to state a claim.

### Legal Standard for a Motion to Dismiss for Failure to State a Claim

On a motion to dismiss, the factual allegations of the complaint must be accepted as true, and the complaint must be liberally construed and its allegations considered in the light most favorable to plaintiffs. *Morin v. Trupin,* 711 F.Supp. 97, 103 (S.D.N.Y. 1989) (citing *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985) and *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "A motion to dismiss will be granted only if it appears to be certain that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim made." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A motion to dismiss is addressed solely to the face of the pleadings, and '[t]he court's function ... is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Co.,* 834 F.Supp. 605, 607 (E.D.N.Y.1993) (quoting *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985)).

### Tortious Interference

Defendants first contend that Louisiana substantive law should apply to this cause of action because Louisiana is both the locus of the tort and the domicile of the defendants. "[A] federal court adjudicating a state law claim must apply the choice of law principles of the forum state." *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 263 (2d Cir.1984). Thus, New York choice of law jurisprudence governs the determination of whether to apply New York or Louisiana law. For tort claims, New York uses the "greater interest test" to make this determination. *See Robins v. Max Mara, USA,* 923 F.Supp. 460, 465 (S.D.N.Y.1996). "Under that test, controlling effect is given to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Id.* at 465 (citing *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963)). Therefore, the question to be decided is whether New York or Louisiana has the greater concern with plaintiff's claim of tortious interference.

Plaintiff Universal corporation organized under the laws of New York with its

principal place of business in New York. Furthermore, Universal alleges that defendants interfered with its customers and that most of this interference occurred while the defendants were in Universal's employ in New York. The claim's only obvious connection to Louisiana is that the defendants are now Louisiana residents. It is clear, therefore, that New York has the greatest interest in the outcome of this litigation. New York law will thus be applied.

 Plaintiff alleges both tortious interference with contractual relations and tortious interference with prospective business relations. Compl. ¶ 22 ("Defendants, and each of them, have wrongfully interfered with the contractual and prospective business relations between Plaintiff and its customers."). To state a claim for tortious interference with contractual relations under New York law, "a plaintiff must allege (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages." *Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73, 77 (S.D.N.Y. 1995). Plaintiff has not alleged the existence of a valid contract between itself and a third party for a specific term nor has it alleged a breach of such a contract. Plaintiff thus fails to allege the necessary elements of a claim for tortious interference. *See Robins v. Max Mara, U.S.A., Inc.*, 923 F.Supp. 460, 468 (S.D.N.Y.1996) ("In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party.") (internal quotation marks and citations omitted).

 To state a claim for tortious interference with business relations,[4] plaintiff must allege: (1) business relations with a third party; (2) defendants' interference with those business relations; (3) defendants acted with the sole purpose of harming the plaintiff or, where defendant acted to advance its own competing interests, the defendant used dishonest, unfair, or improper

means, such as criminal or fraudulent conduct; and (4) injury to the relationship. *See Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994) (citing *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir.1987); *Burba v. Rochester Gas & Elec. Corp.*, 139 A.D.2d 939, 528 N.Y.S.2d 241 (A.D.4th Dept.1988)).

 Universal has not alleged in its complaint any specific business relations with a third party, nor does it allege any harm to such a relationship. Rather, plaintiff states only that defendants inferred with business relations between itself and "its customers". Such an barebones allegation is insufficient to set forth a cause of action for tortious interference with business relations and, therefore, plaintiff's claim is dismissed.

### Breach of Contract

 Defendants argue that plaintiff's claim for breach of contract should be dismissed because plaintiff "has materially overstated Lovecchio's obligations under the 1998 Contract, and no breach has occurred." To state a claim for breach of contract under New York law, a plaintiff must allege: (1) a contract; (2) performance of the contract by one party; (3) breach of the contract by the other; and (4) damages. *See Campo v. 1st Nationwide Bank*, 857 F.Supp. 264, 270 (E.D.N.Y.1994). Plaintiff has alleged all of the necessary elements of a breach of contract claim. Whether the relationship between Marine and Fleet and Lovecchio and Musial is one that would constitute a breach is a question of fact that will not be decided on a motion to dismiss.

### Misappropriation of Confidences and Secrets

 The elements of a cause of action for misappropriation of trade secrets are that (1) plaintiff possesses a trade secret and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. *See Integrated Cash Management Services, Inc.*

---

4. This tort is variously referred to throughout the case law as tortious interference with business advantage, business relations, economic relations, and prospective economic advantage. The elements, however, are the same. *See PPX Enterprises,* 818 F.2d at 269.

*v. Digital Transactions, Inc.*, 920 F.2d 171, 172 (2d Cir.1990). " 'The most comprehensive and influential definition of a trade secret is that set out in § 757, comment b of the Restatement of Tort (1939)....' " *Id.* (quoting *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 297 (2d Cir.1986)). That definition, in relevant part, states:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which give him an opportunity to obtain an advantage over competitors who do not know or use it.

Restatement of Tort § 757, comment b. The New York courts, when determining whether a trade secret exists, have considered the following facts to be relevant:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* (quoting *Eagle Comtronics, Inc. v. Pico, Inc.*, 89 A.D.2d 803, 803–04, 453 N.Y.S.2d 470, 472 (4th Dept.1982) (quoting Restatement of Torts § 757, comment b)).

Here defendants argue that plaintiff's customer list is not a "secret" because it is "readily ascertainable" from sources outside the plaintiff's business. Defs' Mem. of Law 22 (citing *American Institute of Chemical Engineers v. Reber–Friel Co.*, 682 F.2d 382, 386 (2d Cir.1982); *Columbia Ribbon & Carbon Mfg. v. A–1–A Corp.*, 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006, 369 N.E.2d 4 (1977)). Universal's customers are "ship chandlers, steamship lines and cruise ships," *id.* (citing Lovecchio Aff, Ex. 1 at p. 1 (contract signed by plaintiff)), and these customers are readily ascertainable by anyone.

 "[T]rade secret protection will not attach to customer lists where such customers are readily ascertainable from sources outside the former employee's business *unless the employee had stolen or memorized the customer lists.*" *WMW Machinery Co., Inc. v. Koerber AG, et al.*, 240 A.D.2d 400, 402, 658 N.Y.S.2d 385, 387 (2d Dep't1997) (citing *Amana Express Intl. v. Pier–Air Intl.*, 211 A.D.2d 606, 621 N.Y.S.2d 108; *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 328 N.Y.S.2d 423, 278 N.E.2d 636; *NCN Co. v. Cavanagh*, 215 A.D.2d 737, 627 N.Y.S.2d 446; *Walter Karl, Inc. v. Wood*, 137 A.D.2d 22, 528 N.Y.S.2d 94) (emphasis added). Here plaintiff has indeed alleged that defendant Lovecchio stole its customer list. Furthermore, plaintiff does not argue that it was only its customer list that was misappropriated. Rather, the appropriated information is variously described in plaintiff's complaint as "company files, customer list, corporate operating procedures, price catalogs, [and] vendor contract," compl. ¶ 14, and as "vendor contracts, pricing information, operating procedures, and other matters kept confidential or secret by Plaintiff, whose confidential nature and competitive value was known to Musial, Bellore, and Lovecchio." Compl. ¶ 33. Furthermore, plaintiff states that such information was gathered at "considerable expense and effort over the course of its 23–year existence." Compl. ¶ 30. As all allegations on a motion to dismiss must be assumed to be true, this court finds that plaintiff has sufficiently alleged a cause of action for misappropriation of trade secrets.

### CONCLUSION

The corporate defendants—Fleet Medical Resources, Inc. and Marine Medical Unit, Inc.—are dismissed for lack of personal jurisdiction. Furthermore, defendants' motion to dismiss is granted in regards to plaintiff's tortious interference with contractual and prospective business relations claims, which are dismissed. It is denied as to plaintiff's breach of contract and misappropriation of trade secrets claims.

SO ORDERED.